FILED

2013 Sep-19  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PATRICIA A. HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:12-CV-2280-VEH** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Patricia A. Hall, brings this action pursuant to the provisions of

section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking

judicial review of a final adverse decision of the Commissioner of the Social Security

Administration (the Commissioner) denying her application for Supplemental

Security Income (SSI).  The plaintiff filled an application for SSI alleging disability

---

[1]   The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration.  *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.").  Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office."  Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

beginning October 1, 2008. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

2

## II.  STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

3

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800

F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and

Two, she will automatically be found disabled if she suffers from a listed impairment.

If the claimant does not have a listed impairment but cannot perform her past work,

the burden shifts to the Secretary to show that the claimant can perform some other

job." Pope, at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, the ALJ determined the plaintiff met the first test, but

concluded she did not have a severe impairment at step two.  Accordingly, the ALJ

found the plaintiff not disabled.  R. 24.

### III.  FACTUAL BACKGROUND

The medical records contain no treatment notes after the plaintiff's alleged

onset date.  There is only one treatment note in the record after 2003.  It is an

emergency room visit on May 23, 2008.  The plaintiff complained of a two to three

month history of right flank pain and leg cramps.  R. 212.  She was discharged with

a diagnosis of acute low back pain.  R. 211.

On December 23, 2008, Dr. Romeo conducted a consultative physical

examination of the plaintiff.  R. 177-86.  Dr. Romeo's examination of the plaintiff's

extremities and back was normal in all respects.  R. 179.  Dr. Romeo found "no deformity, tenderness, synovitis, or effusion" in the plaintiff's joints.  R. 179.  There were no spasms or deformities in the plaintiff's back.  R. 176.  The plaintiff's gait was normal, and she was able to stoop, kneel, crouch, tandem walk, and heel/toe walk. R. 179.  Straight leg raise testing was negative.  R. 179.  Dr. Romeo found the plaintiff's range of motion was normal in all areas.  R. 181-82.  He reviewed an x-ray of the plaintiff's right knee, which showed "[m]oderate degenerative joint disease." R. 183.  Dr. Romeo's summary states the plaintiff had "[r]ight-sided rheumatic pain without objectively identifiable etiology."  R. 180.  Dr. Romeo also completed a medical source opinion indicating the plaintiff had no limit in her ability to sit, walk or stand.  R. 184.  He indicated the plaintiff would be able lift and carry 10 pounds constantly, 20 pounds frequently, and 30 pounds occasionally.  R. 184.  Dr. Romeo indicated the plaintiff could constantly perform all functions listed on the form including pushing, pulling, climbing, stooping, kneeling, crouching, crawling and handling.  R. 185.

## IV.  DISCUSSION

The plaintiff's only argument on appeal is that the ALJ "failed to apply the correct legal standard at step two of the sequential evaluation process in finding that Ms. Hall did not have a medically determinable impairment."  Pl.'s Br. 3.  She argues

the x-ray taken by Dr. Romeo shows the presence of a medically determinable impairment.  Pl.'s br. 4.  The plaintiff argues the ALJ was required to consider whether that impairment was severe under the regulations.  Pl.'s Br. 4.

The ALJ's finding at step two was as follows:  "There are no medical signs or laboratory findings to substantiate the existence of a severe medically determinable impairment."  Finding # 2, R. 24.  In his decision, the ALJ discussed Dr. Romeo's physical examination:

> Dr. Romeo indicated that the claimant had right-sided pain without any objectively identifiable etiology.  The findings from Dr. Romeo's physical examination showed the claimant is totally normal in all areas. Her range of motion was totally within normal limits in all areas, and x-rays of her right knee showed no fracture or subluxation.

R. 24.  Based upon Dr. Romeo's report, the ALJ concluded the plaintiff had no severe medically determinable impairment:

> I find that a comprehensive review of the current independent medical source examinations clearly show that the claimant does not have any physical or mental impairments.  Accordingly, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment of a severe nature.

R. 24.

The regulations provide that in order to progress beyond step two, a claimant must have an impairment that significantly limits her ability to do basic work activities:  "If you do not have any impairment or combination of impairments <u>which</u>

significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 416.920(c) (emphasis added).  Therefore, the vocational impact of an impairment is the crucial issue in determining whether an impairment is severe at step two.  If an impairment does not significantly limit the claimant's "physical or mental ability to do basic work activities," it cannot be found to be a severe impairment at step two.

The regulations further provide that it is the claimant's responsibility to provide evidence showing the presence of an impairment and how it affects her functioning:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled . . . .

20 C.F.R. § 416.912(c).  In Ellison v. Barnhart, the court emphasized that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).  The plaintiff argues the x-ray showing moderate degenerative joint disease is sufficient to show she has a severe impairment at step two.  But "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead,

7

the claimant must show the effect of the impairment on her ability to work." <u>Wind</u> <u>v. Barnhart</u>, 133 Fed. App'x 684, 690 (11th Cir. 2005) (unpublished) (citing <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986)).

In the present case, the ALJ applied the correct legal standard by considering the impact of the plaintiff's alleged impairments on her ability to work.  The only evidence showing the severity of the plaintiff's physical impairments is from Dr. Romeo.  Dr. Romeo found the plaintiff was not limited in any way by her alleged physical impairments.  Although Dr. Romeo interpreted the plaintiff's x-ray as showing moderate degenerative joint disease of the right knee, he did not include degenerative joint disease as a diagnosis in his report.  Dr. Romeo's summary only states the plaintiff has "[r]ight-sided rheumatic pain without objectively identifiable etiology." R. 180.  The ALJ relied upon Dr. Romeo's report to conclude the plaintiff did not have a physical impairment.  That report provides substantial evidence to support the ALJ's finding of no physical impairment, and his ultimate finding that the plaintiff did not have a severe impairment as defined by the regulations.

## V.  CONCLUSION

The court concludes the ALJ's determination that the plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision.  Accordingly, the Commissioner's final decision

is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

      **DONE** and **ORDERED** this 19th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge